## PENNSYLVANIA R. CO. v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. May 24, 1920.)

No. 2518.

Master and servant ☞13—Hours of Service Act applies to employés moving cars in yards; "movement of trains."

    The purpose of Hours of Service Act March 4, 1907 (Comp. St. §§ 8677–8680), is to promote the safety of employés as well as passengers, and an employé assisting in moving cars in yards, sometimes as many as 15 at one time, is engaged in the movement of trains, within the meaning of section 1 (section 8677), and is subject to the provisions of the act.

In Error to the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Action by the United States against the Pennsylvania Railroad Company. Judgment for the United States, and defendant brings error. Affirmed.

John Heron and Patterson, Crawford & Miller, all of Pittsburgh, Pa., for plaintiff in error.

Roscoe F. Walter, of Washington, D. C., for the United States.

Before BUFFINGTON, WOOLLEY, and HAIGHT, Circuit Judges.

HAIGHT, Circuit Judge. The government brought suit in the court below against the Pennsylvania Railroad Company for an alleged violation of the Act of March 4, 1907, commonly known as the Hours of Service Act (34 Stat. 1415, 8 Comp. Stat. 1916, p. 9448), and recovered judgment.

There being no disputed question of fact, the case was tried without a jury. The respect in which the railroad company is claimed to have violated the act is that it required or permitted one of its em-

ployés to continue or to again go on duty after he had already been working for more than 16 hours in the aggregate, during a 24-hour period, without having had at least 8 consecutive hours off duty. The only question in the case is whether or not such employé was one of the class subject to the provisons of the act. It is the railroad's contention that he was not, because, as it is claimed, he was not, during any of the before-mentioned time, "engaged in or connected with the movement of any train." Section 1 (Comp. St. § 8677). It appears that the employé in question, one Lathero, during the first part of the 16 hours, worked at the company's yard in Hollidaysburg, Pa., as a car dropper. His duties as such consisted of riding on and controlling, by means of hand brakes, cars which were backed over an elevation in the classification yard, called a "hump," and which were then shifted by gravity to the various tracks, where it was intended that they should go to become parts of solid trains. When he had finished work at Hollidaysburg, he was brought to the Altoona yards, where he was engaged as a brakeman in connection with an engine which was used in moving cars in and about the yard for the purpose of making up trains, for the purpose of getting cars to points in the yard where they could be iced, and to places where they could be repaired. At no time during the work at Altoona did this engine make any movement along main-line tracks on which trains are moved by signal or under train dispatchers' orders, but the engine went from place to place in the yard on orders received from the yard master, but without protection of any sort or direction from train dispatchers. On some of the movements of the engine, 4 cars or less were attached, and on some occasions as many as 15 cars were moved at one time.

The railroad company's sole insistment is that the act applies only to movements of trains over main-line tracks, and not to mere yard movements, such as were made in this case. In construing the act, it must be borne in mind that its purpose, as expressed in its title, was to promote the safety of employés, as well as travelers, upon railroads. Of course, in carrying out this purpose, the mischief sought to be avoided was the mental and physical exhaustion of employés liable to result from permitting or requiring them to remain on duty for excessive lengths of time. The act provides that the term "railroad," as used in the act, shall include "all the road in use by any common carrier operating a railroad."

As is well pointed out in the opinion of the learned judge of the court below, no train is excluded from the provisions of the act, except wrecking or relief trains, and there is no limitation as respects the kind of movement or the place in which it shall be made. In this situation, bearing in mind the purpose of the legislation and appreciating that men may as easily become exhausted by overwork in the movement of trains in and about yards as they may in so-called main-line movements, and thus imperil their own, as well as the safety and lives of others, we would have no hesitation, even if we considered this a case of first impression, in holding that Lathero, while at work in the Altoona yards, was engaged in or connected with the movement

of a train, and hence that the railroad company is subject to the penalty prescribed in the act for a violation thereof. As was said by Mr. Justice Lurton in Chicago, Ind. & L. Ry. Co. v. Hackett, 228 U. S. 559, 564, 33 Sup. Ct. 581, 584 (57 L. Ed. 966), in construing a statute of Indiana, to hold that yard movements such as were made in the Altoona yard were not movements of a train "would be to make the act meaningless as to the most dangerous class of work which falls to the lot of railroad employés."

But we are also of the opinion that the question has been set at rest by the decision of the Supreme Court in United States v. Brooklyn Terminal, 249 U. S. 296, 307, 39 Sup. Ct. 283, 63 L. Ed. 613, where it was held that crews engaged in moving a locomotive with 7 or 8 cars between docks of the Brooklyn Eastern District Terminal and its warehouses or team tracks, a distance of over a mile, were engaged in the movement of a train within the act in question, although there was no main-line movement, in the sense that the train was made up and moved over the main-line tracks as distinguished from yard tracks. It is sought to distinguish that case from the case at bar upon the ground that in the former the crews were not engaged in yard work, but in a part of main-line transportation. We are unable, however, to see any such distinction; if there is any, it is in theory rather than fact. In our judgment, the employés in that case were engaged in yard movements quite as much as was the employé in the case at bar.

Although a distinction has been drawn in the cases as to one of the sections of the federal Safety Appliance Acts (27 Stat. 531 [Comp. St. §§ 8605–8612]; 29 Stat. 85 [Comp. St. § 8610]; 32 Stat. 943 [Comp. St. §§ 8613–8615]; 36 Stat. 298 [Comp. St. §§ 8617–8619, 8621–8623]), between a train consisting of an engine and cars which have been assembled and coupled together for a run or trip along the road, and movements in railroad yards, whereby cars are assembled and coupled into outgoing trains, and whereby incoming trains, which have completed their run, are broken up, and the latter held not to be within the provisions of those acts (U. S. v. Erie R. R. Co., 237 U. S. 402, 35 Sup. Ct. 621, 59 L. Ed. 1019), yet, as pointed out by the Supreme Court in the Brooklyn Terminal Case, and by the Circuit Court of Appeals of the Second Circuit, when that case was before it (Brooklyn Eastern District Terminal v. U. S., 239 Fed. 287, 290, 152 C. C. A. 275), those decisions are not applicable to cases arising under the Hours of Service Act.

Accordingly, the judgment of the court below is affirmed, with costs.